

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ELIZABETH L. TORRES o/b/o J.L.M.C.,

                Plaintiff,

     -v-

ANDREW SAUL,
Commissioner of Social Security,[1]

                Defendant.

_____

19-CV-00072-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 12)

Plaintiff Elizabeth Torres brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) on behalf of her child, J.L.M.C., seeking judicial review of the final decision of the Commissioner of Social Security denying J.L.M.C. Supplemental Security Income Benefits ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Torres' motion (Dkt. No. 9) is denied and the Commissioner's motion (Dkt. No. 10) is granted.

## BACKGROUND[2]

On March 17, 2015, Torres filed an SSI application on behalf of her child, J.L.M.C., alleging that J.L.M.C. has been disabled since March 17, 2014 due to sleep apnea, asthma, and possible attention-deficit hyperactivity disorder ("ADHD")."[3] (Tr. 58) Born

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] The Court assumes the parties' familiarity with the case.

[3] References to "Tr." are to the administrative record in this case.

on June 10, 2008, J.L.M.C. was six-years old at the time his mother filed the disability application on his behalf. (Tr. 59) The application was denied on June 4, 2015 (Tr. 58), after which Torres requested a hearing before an Administrative Law Judge (Tr. 83-96). On November 2, 2017, Torres and J.L.M.C. appeared with counsel before Administrative Law Judge David J. Begley (the "ALJ") for a hearing. (Tr. 32-57) On February 21, 2017, the ALJ issued his decision denying J.L.M.C.'s SSI claim. (Tr. 10-31) Torres requested review by the Appeals Council, but on November 21, 2018, the Appeals Council denied Torres' request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-6). This action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the

conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (WDNY 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.  The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588.  While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.  The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence.  Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Failure to apply the correct legal standard is reversible error. *Id.*

II.    *Standards for Determining "Disability" Under the Act*

An individual under the age of eighteen is considered disabled within the meaning of the Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i).  The Commissioner has set forth a three-step process to determine whether a child is disabled as defined under the Act. *See* 20 C.F.R. §416.924.  At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. *Id.* §416.924(b).  If so, the child is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the child has a medically

determinable impairment(s) that is "severe." *Id.* §416.924(c). If the child does not have a severe impairment(s), he or she is not disabled. *Id.* If the child does have a severe impairment(s), the ALJ continues to step three. At step three, the ALJ examines whether the child's impairment(s) meets, medically equals, or functionally equals the listed impairments in Appendix 1 to Subpart P of Part 404 of the Commissioner's regulations (the "Listings"). *Id.* §416.924(d). In determining whether an impairment(s) functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* §416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must result in "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* §416.926a(a). A child has a "marked" limitation when his or her impairment(s) "interferes seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* §416.926a(e)(2). A child has an "extreme" limitation when his or her impairment(s) "interferes very seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* §416.926a(e)(3). If the child has an impairment(s) that meets, medically equals, or functionally equals the Listings, and the impairment(s) meets the Act's duration requirement, the ALJ will find the child disabled. *Id.* §416.924(d).

III.   *The ALJ's Decision*

The ALJ first found that J.L.M.C. was a "school-age child" on the date of the application and at the time of the hearing decision. (Tr. 16) The ALJ then followed the three-step process for evaluating J.L.M.C.'s SSI claim. At the first step, the ALJ found

that J.L.M.C. has not engaged in substantial gainful activity since March 17, 2015, the date of his SSI application.  (Tr. 16)  At the second step, the ALJ determined that J.L.M.C. has the following severe impairments: asthma, obstructive sleep apnea, and learning disability/borderline intellectual functioning.[4]  (*Id.*)  At the third step, the ALJ found that J.L.M.C. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (Tr. 17-21)  The ALJ then proceeded to consider whether J.L.M.C. has an impairment or combination of impairments that functionally equals the Listings, but concluded that J.L.M.C. does not because J.L.M.C. does not have an impairment or combination of impairments that result in either marked limitations in two domains of functioning or extreme limitation in one domain of functioning.  (Tr. 21-27)  As a result, the ALJ held that J.L.M.C. has not been disabled within the meaning of the Act since the March 17, 2015 application date.  (Tr. 27)

IV.   *Torres' Challenge*

Torres argues that the ALJ erred by relying on conclusory and stale medical opinions by two consultative examiners.  (See Dkt. No. 9-1 (Torres' Memo. of Law))  For the following reasons, the Court disagrees.

"The mere passage of time does not render an opinion stale.  Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated."  *Whitehurst v. Berryhill*, 1:16-CV-01005, 2018 U.S. Dist. LEXIS 137417 (WDNY Aug. 14, 2018).  *See also Cruz v. Commissioner of Social Security*, 1:16-CV-00965, 2018 U.S. Dist. LEXIS 128514 (WDNY July 31, 2018) ("consultative examination

---

[4] The ALJ also found, at step two, that J.L.M.C.'s attention-deficit hyperactivity disorder ("ADHD") constituted a non-severe impairment.  (Tr. 16)

is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition"). Thus, "[a] medical opinion based on only part of the administrative record may still be given weight if the medical evidence falling chronologically before and after the opinion demonstrates substantially similar limitations and findings." *Pritchett v. Berryhill*, 1:16-CV-00965, 2018 U.S. Dist. LEXIS 103358, *23 (WDNY June 20, 2018) (internal citations and quotations omitted).

Dr. Susan Santarpia performed a child psychiatric consultative examination on May 14, 2015. (Tr. 289-93) She opined that J.L.M.C. is able to attend to, follow, and understand age-appropriate directions; complete age-appropriate tasks; adequately maintain appropriate social behavior; respond appropriately to changes in the environment; learn in accordance to cognitive functioning; ask questions; request assistance in an age-appropriate manner; be aware of danger and take needed precautions; and interact adequately with peers and adults within normal limits. (Tr. 292) Dr. Santarpia concluded that J.L.M.C. did not present with any psychiatric problems that would significantly interfere with his ability to function on a daily basis. (*Id.*) Dr. Samuel Balderman performed a pediatric consultative examination on J.L.M.C. that same day. (Tr. 1106-110)  Dr. Balderman diagnosed J.L.M.C. with sleep apnea and asthma, but opined that J.L.M.C. has no specific physical limitations. (Tr. 1110) The ALJ gave the opinions of both Dr. Santarpia and Dr. Balderman "some weight." (Tr. 21)  The ALJ reasoned that although their opinions were based on one-time examinations, they were "reasonably consistent with findings throughout the record." (Tr. 21)

Here, medical treatment notes and other evidence in the record dated after the consultative exams is consistent with Dr. Santarpia's assessment that J.L.M.C. does not

suffer significant psychiatric problems and with Dr. Balderman's assessment that J.L.M.C. has no specific physical limitations.  Polysomnograms in January of 2016 and May 2017 showed improvement of J.L.M.C.'s sleep apnea and the presence of only mild to moderate sleep apnea.  (Tr. 18-19, 27, 738, 746)  Medical records and treatment notes beginning in February of 2016 describe J.L.M.C's asthma as "controlled", "stable", "mild", "intermittent", and improved with medication. (Tr. 18-19, 974-75, 1032, 1044, 1056, 1070-71, 1107, 1114, 1116)  A June 2017 chest x-ray was normal.  (Tr. 19, 797)    While J.L.M.C. was diagnosed with a learning disability in November of 2015, J.L.M.C.'s full scale IQ scores in January 2016 and July 2017 were consistent with borderline intellectual functioning rather than a learning disability.  (Tr. 20, 302, 1082)  Records from an April 2016 doctor's visit reflect that J.L.M.C. was doing well in the classroom. (Tr. 1045-46) Records from December 2016 indicate that J.L.M.C. was progressing satisfactorily and steadily in occupational therapy.  (Tr. 1095)  In July of 2017, J.L.M.C. had grades of 70 in English, Math and Science, as well as a score of 85 is Social Studies.  (Tr. 20-21, 1081) At the hearing on November 2, 2017, Torres testified that the J.L.M.C. did not repeat any grades and had no discipline issues.  (Tr. 38-39)  Testimony from both J.L.M.C. and Torres reflected that J.L.M.C. is "very active"; cleans his room; plays video games; enjoys gross motor activities and games; and is able to dress, bathe and groom himself.  (Tr. 18, 25-26, 39-40, 1085, 1101, 1108)  J.L.M.C. testified that he has friends at school and gets along well with other children.  (Tr. 38)

This evidence demonstrates that neither J.L.M.C.'s mental or physical condition deteriorated following the May 14, 2015 consultative examinations.  Thus, the A.L.J. did

not err in partially relying on the opinions of Dr. Santarpia and Dr. Balderman that J.L.M.C. had no significant mental or physical limitations.[5]

Torres further argues that the ALJ erred by relying on his own lay opinion and failing to develop the record.  (See Dkt. No. 9-1 (Torres' Memo. of Law))  The Court disagrees.

As noted above, Dr. Santarpia and Dr. Balderman opined that J.L.M.C. has no mental or physical functional limitations.  The ALJ gave some weight to these opinions, but also found J.L.M.C. to have mild to moderate limitations in four of the domains. Specifically, the ALJ concluded that J.L.M.C. has less than marked limitations in the domains of acquiring and using information; attending and completing tasks; moving about and manipulating objects; and health and physical well-being.[6]  In reaching these conclusions, the ALJ carefully considered and weighed all of the evidence in the record. For example, in determining that J.L.M.C. has less than marked limitations in acquiring and using information as well as attending and completing tasks, the ALJ acknowledged that J.L.M.C. has some difficulties in his abilities to learn, focus and follow a task through to completion.  (Tr. 170-71, 175)  However, the ALJ also noted that J.L.M.C. was able to understand questions and appropriately respond; was advancing in grade levels despite

---

[5] The Court also rejects Torres' argument that the ALJ should not have relied on the opinions of the consultative examiners because they were "conclusory." In particular, Torres argues that Dr. Santarpia's opinion was conclusory because she did not conduct intelligence testing. However, Dr. Santarpia appropriately concluded that intelligence testing was unnecessary since, upon examination, J.L.M.C. had age appropriate expressive and receptive language skills; could complete mathematical, counting and calculation problems appropriate for his age and grade; had coherent and goal-oriented thought process; possessed cognitive functioning in the average range; and had a general fund of knowledge appropriate to his age. (Tr. 291-92)  Torres argues that Dr. Balderman's opinion was conclusory because he did not conduct pulmonary testing.  However, Dr. Balderman's physical examination resulted in generally normal findings, including clear lungs and no respiratory distress.  (Tr. 1106-110)

[6] The ALJ's conclusion that J.L.M.C has no limitations in interacting and relating with others or caring for himself was consistent with the opinions of both Dr. Santarpia and Dr. Balderman.  (Tr. 23-26)

some issues with reading and math, and has demonstrated "intact and age appropriate attention and concentration". (Tr. 38-39, 289-93)  In finding a less than marked limitation in moving about and manipulating objects, the ALJ reasoned that while J.L.M.C. is receiving occupational therapy to help development of his fine motor skills (Tr. 1092), the record also demonstrated that J.L.M.C. is a very physically active child who enjoys participating in gross motor activities and playing video games.  (Tr. 40, 346, 1108)  As to the domain of physical health and well-being, the ALJ acknowledged that J.L.M.C. was diagnosed with asthma and sleep apnea.  (Tr. 27)  However, the ALJ cited medical evidence in the record showing that these conditions were controlled with medicine and treatment, produced only mild to moderate symptoms, and did not significantly limit J.M.L.C.'s physical health or daily functioning.  (Tr. 750-965, 972, 975-76, 1067, 1071-72)

Indeed, the ALJ's discussion of his findings as to each of the domains he assigned less than marked limitations was well-supported with citations to specific evidence in the record, including the hearing testimony, J.L.M.C.'s medical records and J.L.M.C.'s education records.  (Tr. 21-27)  Thus, the Court concludes that the ALJ's evaluation of J.L.M.C.'s capabilities within each of these domains was consistent with the record evidence in its entirety, even if it did not exactly mirror either consultative examiner's opinion.  *See Matta v. Astrue*, 508 Fed. Appx. 53 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Burdick v. Comm'r of Soc. Sec.*, 6:18-CV-06881, 2020 U.S. Dist. LEXIS 51908 (WDNY Mar. 25, 2020) ("The ALJ must

assess an RFC that is consistent with the record as a whole, but it does not have to correspond with one particular medical opinion.")  Further, because the Court finds that the ALJ's determination of J.L.M.C.'s functioning in each domain was well-supported by the medical reports and other record evidence as a whole, there was no need for the ALJ to obtain additional opinion evidence. *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) ("The ALJ is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability.") (internal citations and quotations omitted).

Lastly, Torres argues that the ALJ's findings were not supported by substantial evidence because he improperly evaluated J.L.M.C.'s functioning in the domains of acquiring and using information; attending and completing tasks; moving about and manipulating objects; and health and physical well-being.  (See Dkt. No. 9-1 (Torres' Memo. of Law))  The Court rejects this challenge as well.

The relevant question is not whether there might be some evidence in the record supporting Torres' position, but rather whether substantial evidence supports the ALJ's decision. *See Bonel ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) ("[W]hether there is substantial evidence supporting the [claimant's] view is not the question here; rather, we must decide whether substantial evidence supports *the ALJ's decision*.").  As discussed in detail above, the ALJ considered all of the record evidence in determining J.L.M.C.'s abilities and limitations in each domain.  Having carefully reviewed the ALJ's decision, including his specific findings as to each domain, the Court finds that substantial evidence supports the ALJ's conclusion that J.L.M.C has less than marked limitations in

the domains of acquiring and using information; attending and completing tasks; moving and manipulating objects; and maintaining health and physical well-being.

The Court rejects Torres' argument that the ALJ failed to account for J.L.M.C.'s "highly structured education setting as provided by his IEP" when evaluating the domains of acquiring and using information and attending and completing tasks. The psychological evaluations of J.L.M.C. in January 2016 and July 2017 called for additional academic supports such as smaller teacher-to-student ratio, modification of instruction, extended time for testing, smaller group learning to minimize distraction, and classroom refocusing and redirection. (Tr. 345-47, 1088-92) Indeed, the ALJ recognized that J.L.M.C. was receiving some educational supports through his IEP.[7] However, the ALJ did not base his findings as to J.L.M.C.'s intellectual functioning and ability to maintain concentration solely on J.L.M.C.'s performance in a structured educational setting. As stated above, the ALJ indicated that J.L.M.C. was able to understand questions and respond appropriately during the hearing, and that J.L.M.C. was able to discuss his birthday, grade level, and medications taken. (Tr. 22) Further, J.L.M.C.'s ability to maintain attention and focus at the hearing was consistent with Dr. Santarpia's opinion that J.L.M.C. demonstrated intact and age appropriate concentration and focus. (Tr. 23, 89-93) The ALJ also relied on the fact that J.L.M.C's January 2016 and July 2017 performances on the Wechsler Intelligence Scale for Children-Fifth Edition (WISC-V) were consistent with borderline intellectual functioning rather than a learning disability.[8]

---

[7] An IEP or individualized education plan is a written statement for a child with a disability that includes an explanation of the special education and related services that will be provided to the child in an educational setting. (*See* https://sites.ed.gov/idea/regs/b/d/300.320)

[8] Indeed, pursuant to the Commissioner's regulations, a child is not considered to have a "significantly subaverage" IQ unless he has a full scale, verbal, or performance IQ below 70. 20 C.F.R. 4040. Here, J.L.M.C.'s full scale IQ scores were 79 and 80, his verbal IQ scores were 82 and 86, and his performance subtest scores ranged from 74 to 92. (Tr. 302, 1082)

Moreover, J.L.M.C.'s treating occupational therapist noted, in December or 2016, that J.L.M.C. was progressing satisfactorily and steadily in occupational therapy, which was a contributing factor to his academic issues.   (Tr. 20-21, 1095-96)   This evidence is consistent with the ALJ's finding that while J.L.M.C. has some issues with learning and focus, those issues do not rise to the level of a marked limitation in the domain of either using and acquiring information or attending and completing tasks. *See Lateachia C. v. Berryhill*, 1:17-cv-0752, 2019 U.S. Dist. LEXIS 89808 (WDNY May 24, 2009) (finding that the ALJ did not fail to consider the effect of a highly structured educational setting, where the record reflected that the child "had only mild limitations regardless of setting, and showed improvement when she made an effort and took ADHA and mood stabilizing medicine.").

The Court also rejects Torres' contention that the ALJ erred in finding that evidence of J.L.M.C.'s non-compliance with treatment and medication diminished the alleged severity of his sleep apnea and asthma.  Contrary to Torres' argument, the ALJ did not directly rely on evidence of J.L.M.C.'s non-compliance with treatment and medication in concluding that J.L.M.C.'s asthma and sleep apnea produced only less than marked limitations in the domains of moving about and manipulating objects and health and physical well-being.  Instead, the ALJ relied on evidence in the record that J.L.M.C. is a physically active child who participates in gross motor activities and plays video games. (Tr. 25)   The ALJ also heavily relied on numerous treatment notes indicating that J.L.M.C.'s asthma is mild, controlled, and intermittent; that his sleep apnea improved and is "clinically well"; and that he has normal pulmonary and respiratory functioning.  (Tr. 27,

975-76, 1033, 1057, 1067, 1071-72, 1122)  These records provide the requisite support for the ALJ's conclusion that J.L.M.C. has some limitation, but not a marked limitation, in moving about and manipulating objects and health and physical well-being.

## CONCLUSION

For the foregoing reasons, Torres' motion for judgment on the pleadings (Dkt. No. 9) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 11) is granted.

The Clerk of Court shall take all steps necessary to close this case.


**SO ORDERED.**


Dated:       June 8, 2020
             Buffalo, New York


                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge